**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: June 28 2010

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 10-30676 |
| | ) | |
| John T. Rooney and | ) | Chapter 7 |
| Canda S. Rooney, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 15] and Debtors' response [Doc. #23]. The court held a hearing on the motion that Debtors, their counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and determine. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtors' Chapter 7 case

unless they convert it to Chapter 13 or to Chapter 11 if not eligible to be debtors under Chapter 13. *See* 11 U.S.C. § 109(e).

## **BACKGROUND**

Debtors are married. John Rooney ("Rooney") is fifty-three years old and has one dependent child and three adult children from a previous marriage. He has a thirteen percent equity interest in Blanchard Family Physicians where he has worked as a family practice physician since completing his residency in 2002. He also "moonlights" at an urgent care facility where he sets his hours according to his family practice work schedule. Canda Rooney is forty-three years old and has three dependent children from a previous marriage. She is employed by Chase Bank where she has worked for three years as a bank teller.

Debtors filed a previous Chapter 7 case in March 2009 that was converted to a Chapter 13 case in response to a motion to dismiss filed by the United States Trustee. [*See* Case No. 09-31451, Doc. ## 30, 47 & 53].[1] Debtors' Chapter 13 case was dismissed on January 6, 2010, for failure to make the required payments under their Chapter 13 plan. [*Id.*, Doc. # 116].

On February 12, 2010, Debtors filed this Chapter 7 case, stating that their debts are primarily consumer debts. Debtors' Schedule D shows total secured debt in the amount of $865,035. Their secured debts include $507,850, which represents the amount owed on a construction loan used to build their home located on Eagle Drive in Findlay, Ohio ("Eagle Drive Property"). Rooney testified that, although the home is habitable and they are living in the home, it is only 85% complete and will cost another $25,000 to complete. He testified that the value of the home in its present state is between $270,000 and $280,000 and estimated its value when fully completed to be approximately 60% of the amount owed on the construction loan. The construction loan, which, according to Rooney, has matured but has not been refinanced, is secured by Debtors' Eagle Drive Property as well as their rental property located on Olympic Drive in Findlay, Ohio, which they value at $240,000. [*See* Doc. # 10, Exs. A1, A2, B1, & B2]. Although Debtors are approximately $50,000 in interest payment arrears, they have stated an intention to reaffirm this debt. Nevertheless, their secured creditor has sought and the court has granted relief from the automatic stay with respect to the Eagle Drive Property. Additional secured debts include $242,000 that is also secured by the Olympic Drive rental property, and a business loan in the amount of $95,370.48, which appears to be

---

[1] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

2

secured either by assets of Blanchard Family Physicians or Rooney's interest in the medical practice.[2] Although Debtors have stated an intention to reaffirm both of these debts, Rooney testified that they have surrendered or will surrender the Olympic Drive rental property, and there is no payment for that property appearing on their Amended Schedule J.

Debtors' Schedule D also shows a debt in the amount of $19,813 that is secured by a second mortgage on a condominium in which Rooney's ex-wife is entitled to, and does, live pursuant to their divorce decree and which is titled in her name. Although Debtors include the Quail Lake Road property on Schedule A as property owned by Rooney, the court granted a motion in Debtors' prior bankruptcy case allowing Rooney to transfer title to his ex-wife so that she could refinance the first mortgage on the property. [Case No. 09-31451, Doc. # 92]. At the hearing on the Motion, Rooney testified that the deed to the property is in fact in his ex-wife's name. Thus, it appears that this debt is actually an unsecured debt in this case. *See* 11 U.S.C. § 506(a)(1) (providing that an "allowed claim of a creditor secured by a lien on property *in which the estate has an interest* . . . is a secured claim to the extent of the value of *such creditor's interest in the estate's interest in such property* . . . and is an unsecured claim to the extent that the value of such creditor's interest . . .is less than the amount of such allowed claim").

Debtors' Schedule E shows unsecured priority debt in the amount of $14,636. Their Schedule F shows unsecured nonpriority debt in the amount of $566,942, which includes student loan debt of approximately $307,708 incurred for both his and his children's education, $147,883 owed on credit cards and lines of credit, and $31,325 owed to subcontractors who have provided goods and/or services in connection with the construction of Debtors' home on Eagle Drive. Debtors' unsecured debt also includes approximately $53,299 in deficiency balances owed on a 2005 Gulf Stream camper, 2004 Chevrolet Suburban and a 2002 Oldsmobile, all of which were surrendered by Debtors before they commenced this bankruptcy case.

Debtors' Amended Schedule I shows combined gross monthly income $15,558. This amount includes $10,833 earned by Rooney at his medical practice and $2,950 earned by him at the urgent care facility. Rooney testified that he took a $30,000 cut in pay in 2008 as a result of significant increases in his family practice overhead expenses and malpractice insurance premiums. He nevertheless predicts that his annual income earned at Blanchard Family Physicians going forward will be $130,000. Although his hours

---

[2] Under "Nature of Lien, And Description And Value of Property Subject to Lien" on Schedule D, Debtors state as follows: "Loan signed individually and as vice president of Blanchard Family Physicians - 1/2 interest." [Doc. # 10, Schedule D].

vary somewhat, he estimates his annual income from the urgent care facility to be approximately $45,000, for a total income of $175,000. Debtors' combined gross monthly income also includes $1,575 earned by Canda Rooney plus $200 received by her in child support payments.

Debtors' payroll deductions, as shown on Amended Schedule I, total approximately $4,435.33. Deductions from Rooney's pay include approximately $1,458 for child support and $108 as a 401(k) contribution. Rooney testified that he decreased his 401(k) contribution to the minimum contribution required to maintain the plan for the benefit of other employees of Blanchard Family Physicians. Debtors' monthly income after their stated payroll deductions as shown on Schedule I totals approximately $11,123.

Debtors' Amended Schedule J shows total monthly living expenses of $10,916. Their monthly expenses include, among other things, a home mortgage expense of $3,851, alimony in the amount of $1,570, a house insurance expense of $172, home maintenance expense of $300, which amount does not include their home completion costs, and student loan payments of $1,600. Rooney testified, however, that he has been making student loan payments of only approximately $500 per month and that Debtors have not made their home mortgage payments for over a year.[3] According to Rooney, those funds have instead been used to purchase carpeting for their Eagle Drive home and to pay for work that is necessary to complete their home.

In addition to the expenses included on their Amended Schedule J, Rooney also makes the second mortgage payment on his ex-wife's Quail Lake Road condominium in the amount of $150 per month. He also makes a $450 payment on his twin daughters' student loans. Both of his daughters have recently graduated from college and are currently employed. Nevertheless, Rooney testified that he is obligated by a divorce decree to pay for their education.

Debtors' Form B22A calculating the means test shows that their annualized current monthly income at the time of filing this case was above the median income for a household the size of Debtors in Ohio. According to Debtors' means test calculation, no presumption of abuse arose under 11 U.S.C. § 707(b)(2). Instead, the UST is proceeding on his motion to dismiss for abuse solely under § 707(b)(3) based on the totality of the circumstances.

## **LAW AND ANALYSIS**

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be

---

[3] According to Rooney he tendered their monthly payment in January 2010 but the lender refused to accept the payment.

an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

In this case, the UST does not argue that Debtors filed their petition in bad faith but instead contends that the totality of the circumstances show that they are not needy and that they have the ability to repay a significant portion of their unsecured debt. Debtors are "needy" when "[their] financial predicament warrants the discharge of [their] debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone is sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126. "Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004)).

In arguing that Debtors have the ability to pay a significant portion of their unsecured debt, the UST asserts that Debtors' housing expense can be reduced without depriving them or their dependents of adequate food, clothing, shelter or other necessities. The UST also asserts that the monthly student loan expenses paid by Debtors should be treated as income available to fund a plan that provides for a ratable

5

distribution among all creditors. For the reasons that follow, the court agrees that Debtors can reduce their expenses and make funds available to pay a meaningful portion of their unsecured debt.

Initially, the court notes that in evaluating the totality of Debtors' financial circumstances, it has taken into consideration that they have made meaningful efforts to decrease their expenses by surrendering both the Olympic Drive rental property, a camper and two vehicles. That is the kind of belt-tightening that is required of Chapter 7 debtors. *See In re Bender*, 373 B.R. at 30.

Nevertheless, the court agrees that, under the circumstances of this case, Debtors' $3,851 budgeted monthly housing expense is excessive. This amount was an interest only monthly payment on a $510,000 construction loan for their home. The loan has matured and is in default. There is no reasonable prospect of Debtors being able to refinance the loan in order to keep the house. Debtors have made no payments for over a year, so this budgeted amount is not presently an expense they are actually paying. They are in interest payment arrears of approximately $50,000. Relief from the automatic stay has already been granted to their construction loan creditor and it is not accepting any further monthly payments. [Doc. ## 10, 19]. Furthermore, the value of Debtors' uncompleted home that secures the loan is only sixty percent of the amount owed on the mortgage debt. And Debtors estimate that they will have to expend another $25,000 in order to complete the home. For the past year, Debtors have continued to pour money into the property at the expense of unsecured creditors. They may not continue to do so while seeking a discharge of their unsecured debt as the ultimate subsidy of construction of the home. Debtors' Amended Schedule J also includes other expenses related to the property, such as at least a portion of the $400 in budgeted taxes, and $300 a month in budgeted maintenance costs. The court believes that alternative housing can be obtained and that Debtors can thereby significantly reduce their overall housing expenses to make funds available to pay their unsecured creditors.

With respect to Debtors' student loan expenses, the majority of courts have found that the non-dischargeability of a student loan is not, without more, a basis to permit a debtor to treat the student loan creditor more favorably than other unsecured creditors. *See, e.g., Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 215-16 (8th Cir. 1994); *Bentley v. Boyajian (In re Bentley),* 266 B.R. 229, 239-42 (B.A.P. 1st Cir. 2001); *In re Tucker*, 150 B.R. 203, 205 (Bankr. N.D. Ohio 1992); *In re Reimer*, No. 07-32787, 2008 WL 495537, \*2-3, 2008 Bankr. LEXIS 517, \*6-9 (Bankr. N.D. Ohio Feb. 21, 2008); *cf. XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1453 (6th Cir. 1994) (agreeing that courts must act "very cautiously" in making an equitable determination "in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy

6

laws"). *But see In re Gregg*, 179 B.R. 828, 830 (Bankr. E.D. Tex. 1995) (finding that separate classification of student loans for payment in full does not unfairly discriminate against the other unsecured creditors who would be paid only .74% since the student loans are nondischargeable). This court agrees with the majority of courts. Congress specified the types of unsecured claims that should be treated more favorably than others in § 507 wherein it granted priority status to those claims. Non-dischargeable student loan debts are not among those specified in § 507. To treat certain unsecured creditors more favorably simply because they hold a nondischargeable claim would elevate such claims to a priority status that was not intended by Congress. *See In re Kaminski*, 387 B.R. 190, 197 (Bankr. N.D. Ohio 2008) ("[T]he two matters-nondischargeability and the favorable treatment of a creditor's-claim are neither related nor dependent on the other. Instead, each is based upon its own statutory authority").

In this case, John Rooney testified that he is obligated by a divorce decree to pay for his children's college education and, therefore, to pay their student loan expenses, which total $450 per month. While this may be a reason to treat those student loan creditors more favorably, Debtors' budget includes a monthly expense of $1,600 for payment of John Rooney's student loans. He offers no persuasive reason for treating his own student loan creditors more favorably than other unsecured creditors. Reallocation of these funds for a ratable distribution among Debtors' unsecured creditors would result in a significant distribution to those creditors.

In determining whether granting Debtors relief under Chapter 7 would be an abuse, the court has also considered the fact that they both enjoy stable employment and regular income. Although, the total amount of their unsecured debt exceeds the Chapter 13 statutory eligibility limits, *see* 11 U.S.C. §§ 109(e), their 2009 bankruptcy case, which included much of the same debt, the total of which also exceeded the statutory eligibility limits, proceeded in Chapter 13 without objection. Thus, Debtors' eligibility for adjustment of their debts through Chapter 13 is unclear. Nevertheless, if ineligible for Chapter 13, they may still pursue relief through Chapter 11.[4]

The availability of debtors' remedies under state law and the relief that might be afforded through private negotiations with creditors are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion,

---

[4]Reorganization also offers the legal framework to restructure the construction loan since it is secured by other property in addition to Debtors' principal residence, *see* 11 U.S.C. §§ 1123(b)(5) and 1322(b)(2), and could be a method of achieving housing expense reduction.

7

*In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtors' financial problems.

In sum, the court finds that granting Debtors relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of that chapter given the following financial circumstances: (1) Debtors have generally stable, regular income and above median income status; (2) depending on their eligibility, they may seek relief under either Chapter 13 or Chapter 11 if they choose to do so; (3) they have the ability to reduce their overall housing expense without depriving Debtors or their dependents of any necessity; (4) and they have the ability to repay a meaningful portion of their unsecured debt by applying both their housing expense savings and the funds currently budgeted to pay John Rooney's student loan expense to such debt.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtors are allowed thirty (30) days from the date of this order to file a motion to convert to either a Chapter 13 or Chapter 11 case, absent which the Motion of the United States Trustee to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) & (3) [Doc. # 15] will be granted, and this case will be dismissed, by separate order of the court.